**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

REYNALDO HERRERA, JR.,  :
      Plaintiff,  :
               :
vs.  :     CIVIL ACTION 18-0058-KD-MU
               :
TREY OLIVER, III, *et al*.,  :
      Defendants.  :
               :

## Report & Recommendation

Plaintiff Reynaldo Herrera, Jr. an Alabama prison inmate proceeding *pro se* and *informa pauperis*, filed his complaint under 42 U.S.C. §§ 1983. (Doc. 1). This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72(a)(2)(R) and is now before the undersigned on Defendants' Motion for Summary Judgment. (Doc. 15). After careful review of the pleadings, and for the reasons set out below, the undersigned recommends that Defendants' Motion for Summary Judgment be **granted** in favor of Defendants and that the claims asserted against Defendants Trey Oliver, III, Sam Cochran, and Sam Houston be **dismissed** with prejudice.

## I.  Summary of Allegations and Background.

In his complaint, Plaintiff Reynaldo Herrera, Jr. ("Herrera") challenges the conditions of his confinement while incarcerated at Mobile County Metro Jail ("Mobile Metro Jail" or "the jail").[1]  Specifically, Herrera alleges that he was

---

[1]    The record indicates that Herrera was booked into the Mobile County Metro Jail on August 17, 2017 (doc. 12-1 at 3) and was transferred from the jail to Kilby Correctional Facility in April 2018. (*See* Doc. 10).

exposed to toxic waste (in the form of backed up sewage drainage in his cell and shower), contaminated water, faulty air ventilation, extreme temperatures, and general unsanitary conditions (including, rusted tables, dirty cells, bacteria, mold, continuous plumbing problems). (Doc. 1 at 4). Additionally, Herrera claims he was denied adequate medical care. *Id*. Herrera claims he notified the defendants numerous times, verbally and through filed grievances, of the deficient conditions but his complaints were ignored. Herrera is suing Warden Trey Oliver, III., Sheriff Sam Cochran, and Deputy Warden Sam Houston for the alleged Eighth Amendment violations. (*Id*. at 5-6). Herrera requests that the challenged conditions "be fixed" and further requests compensatory and punitive damages in the amount of $3,000,000.00. (*Id*. at 7).

Defendants have answered Herrera's suit and filed a Special Report in support of their denial of all allegations. (Docs. 12, 13). Defendants' pleadings have been converted by the Court into a Motion for Summary Judgment (doc. 15), to which Plaintiff Herrera has responded. (Doc. 27). After a thorough review of the record, this motion is ripe for consideration.

## II. Legal Standards.

### a. Summary Judgment.

Summary Judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)[2]; *see Anderson v. Liberty Lobby, Inc.,* 477

---

[2]     Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting

U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'"(emphasis omitted)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson*, 477 U.S. at 255.

---

summary judgment [, however,] remains unchanged. . . . The amendments [have] not affect[ed] continuing development of the decisional law construing and applying these phrases." Fed. R. Civ. P. 56 advisory committee's note on 2010 amendments.

*ThyssenKrupp Steel USA, LLC v. United Forming, Inc*., 926 F. Supp. 2d 1286, 1289-90 (S.D. Ala. Jan. 29, 2013) (citations omitted).

The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts.  A genuine dispute requires more than "some metaphysical doubt as to material facts." *Garczynski*, 573 F.3d at 1165 (internal citations omitted).   A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment.  *Id*.  In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995).  More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007); *see also Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. Aug. 29, 2011) ("In cases where opposing parties tell different versions of the same events one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations." (citations omitted) (unpublished)).[3]

### b.  Eleventh Amendment Immunity.

---

[3]    "Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority."  11th Cir. R. 36-2.

It is unclear from the complaint whether Herrera is suing the defendants in their official or individual capacities. To the extent Herrera seeks to impose liability against Sheriff Cochran, Warden Oliver, and Deputy Warden Houston in their official capacities, the defendants are immune from suit, as the liability imposed, in reality, is on the entity the individuals represent versus the individuals themselves. *Brandon v. Holt*, 469 U.S. 464, 471-72, 105 S. Ct. 873, 83 L. Ed. 2d 878 (1985).

The entity Sheriff Cochran and Wardens Oliver and Houston represent for consideration of immunity from suit under 42 U.S.C. § 1983 is determined by reference to state law. *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990). Alabama law holds that a sheriff is a state, rather than a county, official for purposes of immunity from suit. *Parker v. Amerson*, 519 So.2d 442 (Ala. 1987); Ala. CONST. Art. V § 112 (listing county sheriffs as members of the state's executive department); *see also Taylor v. Adams*, 221 F.3d 1254, 1256 (11th Cir. 2000) ("Alabama sheriffs operating jails are state officers protected by Eleventh Amendment immunity."). Similarly, "employees of the sheriff, deputies [and officers] in their official capacities, are [] entitled to Eleventh Amendment immunity." *Scruggs v. Lee*, 256 F. App'x 229, 232 (11th Cir. 2007); *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997) ("[J]ailers are state officials for the purpose of Eleventh Amendment immunity."). There is no dispute that Defendants Cochran, Oliver, and Houston, in their official capacities as sheriff and wardens, are arms of the state for Eleventh Amendment Immunity purposes and are therefore barred from suit for monetary damages in this action.

### c. Qualified Immunity.

Defendants further assert the defense of qualified immunity as a bar from suit against them in their individual capacities. (Doc. 13). Qualified immunity offers complete protection for individual government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "Qualified immunity balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L.Ed.2d 565 (2009). A party is eligible to claim qualified immunity if he was acting within the line and scope of his employment. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). Based on Plaintiff's complaint allegations and the record, clearly the defendants were acting within their discretionary authority at the time the complaint arose. Thus, the burden shifts to the plaintiff to establish that qualified immunity is inappropriate. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

The Supreme Court has mandated a two-step analysis for resolving qualified immunity claims. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). First, a court must decide whether the facts that a plaintiff has alleged "show the [defendant's] conduct violated a constitutional right." *Id*. Second, the court must decide "whether the right was clearly established." *Id*. The determination of these elements may be conducted in any order. *Pearson v.*

*Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). Therefore, the Court will proceed with its analysis of whether Plaintiff has successfully alleged a constitutional violation.

## III. Discussion.

At the time the complaint arose, Herrera was being held as a pretrial detainee at the Mobile Metro Jail; thus, his claims fall under the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535-36, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). However, the standard for providing basic necessities and the conditions of confinement for inmates is regarded by the courts as the same "minimum standard allowed by the due process clause . . . as that allowed by the [E]ighth [A]mendment for convicted persons." *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1573-74 (11th Cir. 1985); *see also*, *Johnson v. Bessemer*, 741 F. App'x 694, 699 n.5 (11th Cir. 2018) (noting the "objectively reasonable" test of *Kingsly v. Hendrickson*, 576 U.S. __, 135 S. Ct. 2466, 192 L. Ed. 2d 416 (2015) as applicable to excessive force claims only); *Collins v. Bates.*, No. 2:14-CV-231-WHA, 2017 U.S. Dist. LEXIS 124277, *10-115 (M.D. Ala., Aug. 4, 2017) (recognizing the Eleventh Circuit's continued utilization of the Eighth Amendment deliberate indifference standard in deciding claims of pretrial detainees which challenge medical treatment and other conditions).

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. Prison conditions constitute cruel and unusual punishment only when they result in the "unquestioned and serious deprivation of

basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).

> The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994). Although the Amendment does not require comfortable prisons, it prohibits inhumane ones. *Id.* The Eighth Amendment guarantees that prisoners will not be "deprive[d] ... of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (quoted in *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004)). "[B]asic human necessities include food, clothing, shelter, sanitation, medical care, and personal safety." *Harris v. Thigpen*, 941 F.2d 1495, 1511 (11th Cir. 1991) (cited in *Collins v. Homestead Corr. Inst.*, 452 F. App'x 848, 850-851 (11th Cir. 2011)). "[T]o make out a claim for an unconstitutional condition of confinement, 'extreme deprivations' are required . . . ." *Thomas v. Bryant* 614 F.3d 1288, 1304, 1306-07 (11th Cir. 2010) (citing *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L.Ed.2d 156 (1992)).

*Magwood v. Beem*, 4:14cv314-MW/CAS, 2015 U.S. Dist. LEXIS 22875, *42 (N.D. Fla. Jan. 27, 2015). To demonstrate a violation of an Eighth Amendment right in a section 1983 prison conditions action, a plaintiff must prove three elements: (1) "a condition of confinement that inflicted unnecessary pain or suffering"; (2) "the defendant's deliberate indifference to that condition;" and (3) "causation." *LaMarca v. Turner*, 995 F.2d 1526, 1535, 15-38-39 (11th Cir. 1993), *cert. denied*, 510 U.S. 1164, 114 S. Ct. 1189, 127 L. Ed. 2d 539 (1994) (internal quotation marks and citations omitted) ("The wrong in Eighth Amendment cases is the deliberate indifference to a constitutionally infirm condition; that wrong must, in turn, have been the proximate cause of the plaintiffs' injuries."). To establish the first prong, Herrera must show that he was deprived of "the minimal civilized measure of life's necessities," *Rhodes*, *supra*, at 347, or of a "single human need[.]" *Wilson v. Seiter*,

501 U.S. 294, 305, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 270 (1991). To establish the second prong, Herrera must show the Defendants "wantonly permitted the constitutionally infirm condition to persist" while knowingly or recklessly disregard[ing] [Herrera's] basic needs." *LaMarca*, 995 F.2d at 1535. The third prong "requires proof of an affirmative causal connection between the actions taken by a particular person 'under color of state law' and the constitutional deprivation." *Id*. at 1583 (quoting *Williams v. Bennett*, 689 F,2d 1370, 1380 (11th Cir. 1982)). "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson v. Seiter*, 501 U.S. at 305.

Herrera fails to state a valid claim for relief for several reasons. First, his allegations fail to rise to a constitutional level. Second, he has failed to establish that the named defendants acted with deliberate indifference to his complaints. Third, Herrera has failed to connect the named defendants to any caused harm. In fact, Herrera fails to allege any injury due to the conditions of his confinement. *See LaMarca*, 995 F.2d at 1539-40 (requiring that injury be connected to a defendant's deliberate indifference to the constitutionally infirm condition).

### a. Constantly Flushing Toilet.

A prison official only violates the Eighth Amendment when the deprivation alleged is objectively, "sufficiently serious," and the official has a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 833-34 (internal quotations omitted). Herrera's claim that the toilet in his cell was constantly flushing and "making sleep very difficult" fails to establish either of these requirements. (Doc. 1 at 8; Doc. 27

at 2).  While confinement in a cell with a working, but constantly flushing toilet, may be an annoyance, it does not "result in the denial of 'the minimal civilized measure of life's necessities.'"  *Id*. at 834 (quoting *Rhodes*, 452 U.S. at 347).  Additionally, the record belies Herrera's claim that his requests to have the toilet repaired were ignored by prison officials.  Rather, the record is replete with maintenance requests and actions taken to attempt to fix the toilet.  Below is a summary of the work orders, including the date the order was submitted, the date the order was completed, and the action taken by the maintenance staff:

| **Submitted** | **Completion** | **Action/Repair** |
| --- | --- | --- |
| 10/22/17 | | classified as a duplicate order (Doc. 12-3 at 4). |
| 10/24/17 | 10/26/17 | reset the button on the toilet (Doc. 12-3 at 5). |
| 10/26/17 | 10/27/17 | replaced the flush valve and vacuum breaker (*Id*.). |
| 11/5/17 | 11/5/17 | replaced the flush diaphragm (*Id*. at 6). |
| 11/21/17 | 12/6/17 | replaced flush valve and vacuum breakers (*Id*. at 8). |
| 12/20/17 | 12/26/17 | reported that the toilet was "working fine" (*Id*. at 10). |
| 12/21/17 | 12/23/17 | replaced the flush valve (*Id*. at 11). |
| 12/21/17 | 12/30/17 | reset the toilet.  (*Id*.at 10). |

Consequently, Herrera has failed to establish that Defendants were deliberately indifferent to his complaints regarding the constantly flushing toilet. Summary judgment should be granted in favor of Defendants on this claim.

### b.  Sewage Backup.

The Eleventh Circuit has long recognized the right "not to be confined . . . in conditions lacking basic sanitation." *Chandler v. Baird*, 926 F.2d 1057, 1065-66

(11th Cir. 1991). However, the challenged condition must pose "an unreasonable risk of serious damage to [the prisoner's] future health or safety" to rise to the level of a constitutional violation. *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (holding that a prisoner must prove that the prison condition he complains of is sufficiently serious and "extreme" to violate the Eighth Amendment); *see also Alfred v. Bryant*, 378 F. App'x 977, 980 (11th Cir. 2010) ("'Inmates cannot expect the amenities, conveniences and services of a good hotel.'" (quoting *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988)); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (a backed-up shower drain that caused water to flow into the dayroom was not sufficiently serious to rise to the level of a constitutional violation); *Landfair v. Sheahan*, 878 F. Supp. 1106, 1112-13 (N.D. Ill. 1995) (shower plumbing deficiencies that caused plaintiff to contract athlete's foot did not rise to level of a constitutional violation).

In his complaint, Herrera alleges he was exposed to "raw sewage backing up in his cell and in the shower where there was also a toilet and drain." (Doc. 27 at 2). Herrera's allegation falls short of the stringent constitutional standard. While "[the Eighth Amendment is concerned with both the *severity* and the *duration* of [a] prisoner's exposure to [unpleasant conditions]", *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004), Herrera fails to allege facts sufficient to show either, specifically, how often it occurred, the length of time the problem existed, or any harm it caused him. As such, Herrera cannot establish the objective component of his conditions of confinement claim. *Id.* at 1297 (declining to discuss the

subjective component when the inmate failed to meet his burden on the objective component).

Assuming *arguendo* that the backed-up sewage was considered objectively serious, the evidence is void that the named defendants were subjectively aware Herrera faced a "substantial risk of serious harm" and disregarded that risk by failing to take reasonable measures to abate it. *See Farmer*, 511 U.S. at 828, 834, 837. Contrarily, the record reveals, and Plaintiff's own grievances support, that Defendants responded to all Plaintiff's submitted complaints and grievances regarding the toilet in his cell, and the record further confirms that Herrera never submitted a grievance regarding a sewage leak or back-up into the drains.[4] *But cf.*, *Peterson v. Morin*, 2:11-cv-176, 2012 U.S. Dist. LEXIS 67771, *30-32 (S.D. Tex. Apr. 5, 2012) (Defendants' summary judgment was denied where the defendants were made aware of the unsanitary conditions but failed to respond to grievances or provide necessary cleaning supplies). Consequently, Herrera has failed to establish that Defendants acted with deliberate indifference to any sewage backup in the shower and cell drains, and summary judgment should be granted in favor of Defendants.

### c. Contaminated Water.

According to Herrera, the water at the jail was "contaminated," and he was forced to drink and shower in unsanitary water. Herrera claims he submitted a single grievance regarding this issue on January 26, 2018. The grievance states:

---

[4] Notably, a review of the voluminous Maintenance Requests and Work Orders fails to show a single complaint regarding sewage backup in the 905 C Dorm, where Herrera was housed. (*See* 12-3 1-13; Doc. 12-4 at 1-12).

> I was in the clinic and asked to get some water from water fountain, and was told it was out of order because water was contaminated. Officer Evans is who told me this, why are the inmates in here still drinking this water? How long has the water been contaminated?

(Doc. 12-5 at 6). The response to the grievance was entered on January 29, 2018, and states:

> [W]e are aware that the fountain is out of order but contaminated, we have not been informed of such.

(*Id.*). Clearly, Herrera has failed to show, based on the grievance response, that Defendants were aware of any issue with contaminated water in the jail and deliberately denied him access to clean water. Further lacking from the record are facts sufficient to indicate an objectively serious issue, including the color of the water, odor of the water, length of time the alleged contamination lasted, etc., or even a single work order related to such an issue by any inmate. Additionally, Herrera fails to allege any injury or harm caused by the alleged state of the water. As presented, Herrera's claim is vague and conclusory and insufficient to establish a constitutional violation. Accordingly, summary judgment is recommended in favor of Defendants.

### d. General Unsanitary Conditions.

In his complaint, Herrera lists general conditions in the jail, including mold in the shower, mold on the ceiling of his cell, rust on the tables used for eating, dusty ventilation, and corroded return air vents, which he claims constitute Eighth Amendment violations. (Doc. 1 at 9-10). While the Eleventh Circuit has long recognized the right "not to be confined . . . in conditions lacking basic sanitation," *Chandler v. Baird*, 926 F.2d 1057, 1065-66 (11th Cir. 1991), it has repeatedly

refused to find Eighth Amendment violations based on conditions which cause mere discomfort." *Chandler*, 379 F.3d at 1295. Herrera has failed to allege that he was denied any basic human need for an unreasonable period of time. *Wilson*, 501 U.S. at 305. Consequently, Herrera's allegations concerning the overall cleanliness of the jail are not sufficiently serious to satisfy the objective component of the Eighth Amendment test, especially when the complaint is void of facts that Herrera has suffered, or imminently will suffer, any injury as a result of the conditions. *See*, *Venturi v. Boyd*, 3:14-cv-00823-CLS-TMP, 2014 U.S. Dist. LEXIS 158813 (N.D. Ala. Oct. 14, 2014) (mold in the shower area and withholding of cleaning supplies for thirty-day duration did not rise to level of constitutional violation); *Sanders v. Allen Cnty. Jail*, No. 06-CV-302 (RL), 2006 U.S. Dist. LEXIS 64232, 2006 WL 2578977, at *2 (N.D. Ind. Sept. 6, 2006) (holding that a dirty, moldy shower which resulted in plaintiff contracting Athlete's foot was not a serious medical condition); *Shrader v. White,* 761 F.2d 975, 983-84 (4th Cir. 1985) (prisoners' allegations including leaking ceilings and a shower area covered in rust, mold, and mildew were constitutionally insignificant); *Wilson v. Lynaugh*, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

Thus, Herrera's claims are not extreme, as his challenged conditions do not "pose[] an unreasonable risk of serious damage to the prisoner's health or safety."

*Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010). Consequently, Herrera has failed to state an Eighth Amendment conditions of confinement claim, and summary judgment should be granted in favor of Defendants.

**e. Extreme temperatures.**

Herrera claims that Dorm 905 C, where he was housed, was extremely cold. (Doc. 1 at 9). This allegation is supported by the record, but the record is also replete with maintenance requests and actions taken to attempt to fix the air conditioner and regulate the temperature in the dorm. Below is a summary of the work orders, including the date the order was submitted, the date the order was completed, and the action taken by the maintenance staff:

| Submitted | Completion | Action/Repair |
|-----------|------------|---------------|
| 12/7/17 | 12/11/17 | changed over to heat and monitored temperatures to desirable level. (Doc. 12-3 at 9). |
| 12/26/17 | 1/22/18 | rest heater (Doc. 12-3 at 11). |
| 12/28/17 | 1/18/18 | adjusted 4 t stats on roof. (Doc. 12-3 at 11). |
| 1/30/18 | 2/1/18 | adjusted t stat. (Doc. 12-4 at 8). |

Additionally, Herrera admits that he was allowed to wear his blanket around him in the dorm due to the cold temperature. (Doc. 12-5 at 6).

Courts have found exposure to cell temperatures violate the Eighth Amendment when the totality of the conditions of confinement are sufficiently "extreme" to create "an unreasonable risk of serious damage to [a prisoner's] future health or safety" and the defendants acted with deliberate indifference to that risk of harm. *Chandler,* 379 F.3d at 1289; *see, e.g., Dixon v. Godinez*, 114 F.3d 640,

643 (7th Cir. 1997) (temperatures in cell averaging 40 degrees Fahrenheit and regularly falling below freezing for four consecutive winters); *Del Raine v. Williford*, 32 F.3d 1024, 1036 (7th Cir. 1994) (prisoner housed in cell with broken windows in which temperature was near outdoor temperature including a period of two days where wind chills were from -40 to -50 degrees Fahrenheit); *also see Henderson v. DeRobertis*, 940 F.2d 1055, 1056-1061 (7th Cir. 1991) (finding an Eighth Amendment violation clearly established where conditions included broken cell windows, below freezing  temperatures inside the cell, no winter clothing, lack of extra blankets, and a malfunctioning heating system over period of four days in which temperature fell to -22 degrees Fahrenheit and a windchill of -80 degrees Fahrenheit outside).

However, courts have determined no constitutional violation occurred when the conditions of confinement include allegations of only uncomfortable temperatures. *See, e.g., Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (concluding that while the temperature may be uncomfortable, that alone cannot support a finding that the plaintiff was subjected to cruel and unusual punishment in violation of the Eighth Amendment); *Mays v. Springborn*, 575 F.3d 643, 648-49 (7th Cir. 2009) (prisoner's allegations of exposure to cold did not rise to level of objectively serious harm necessary to show Eighth Amendment violation where prisoner alleged he caught colds, suffered hurt ears and numb hands, and felt frostbite, but failed to show he was exposed to cold for long periods of time or that he suffered anything more than usual discomforts of winter); *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (high temperatures that were the result of

allegedly inadequate cooling were not a violation of the Eighth Amendment even though they aggravated Plaintiff's sinuses and were uncomfortable); *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977) (federal court's involvement occurs only when there are extreme temperatures that are injurious to an inmate's health); *Thomas v. Rodgers*, 3:13-cv-1052-J-32TEM, 2013 U.S. Dist. LEXIS 161709 (M.D. Fla. Oct. 16, 2013) (no Eighth Amendment violation when prisoner's failure to allege how cold the temperature was in his cell, that he suffered any injury from his 36-hour exposure to cold temperatures, that the defendants knew of a risk of serious harm to plaintiff, or that he ever informed the defendants that he was uncomfortably cold); *King v. Henry*, 5:09cv365/MCR/EMT, 2010 U.S. Dist. LEXIS 115185, *20, 2010 WL 4386539 (N.D. Fla. Sept. 24, 2010) (forty-eight day exposure to cold temperatures with access to a winter coat did not pose a risk of damage to plaintiff's health "so grave that is violates contemporary standards of decency to expose anyone unwillingly to such risk").

Based on the record, the undersigned finds that Herrera was, at worst, extremely uncomfortable in his dorm, but Herrera has failed to show facts sufficient to establish a constitutional violation. First, he fails to show that the conditions under which he was held were objectively harmful. Herrera fails to specify or approximate the temperature of his cell; he never claims that there was a broken window letting in the bitter cold elements; he does not allege he was forced outside without proper warm clothing in the winter temperatures; he does not allege he was denied blankets for warmth. Second, although Herrera alleges and the record evidences that Defendants had knowledge of the cold, there is no alleged risk to

Herrera's health or safety, and the record confirms that the extreme cold temperatures were addressed multiple times through maintenance requests. Third, Herrera has failed to identify a single injury suffered due to the lack of heating. The absence of specific facts to support this claim precludes Herrera from establishing a genuine issue of material fact concerning a deprivation of a single human need. For all these reasons, the undersigned finds Herrera has not carried his burden to overcome Defendants' motion for summary judgment.

**f. Failure to follow procedure and obtain medical care when booked into Mobile Metro Jail.**

Herrera further claims that Defendants denied him adequate medical treatment for scrapes that were on his body when booked into Mobile Metro Jail. The record confirms that Herrera was booked into Mobile Metro Jail on August 17, 2017. At the time of booking, he received a medical and mental health screening. The medical record reflects that at the time of booking, Herrera's vital signs were all within normal ranges, and he was not "in need of Emergency Medical Treatment due to injury, excessive bleeding, extreme pain, or unconsciousness". (Doc. 12-2 at 6). The screening nurse did note on the intake form that Herrera "report[ed] skin on right elbow came off when he fell". (Doc. 12-2 at 8, 19). Herrera did not receive any type of treatment for the scrape at the time of booking. On September 30, 2017, Herrera submitted the following Medical Inquiry:

> I'm putting this in as a follow up, when I got here on august 17, I told, and showed the nurse that evaluated me scrapes I had, and that I needed them looked at. She told me that when I get to the back tell the officer that's escorting you, I did that, nothing happened, after im here for two weeks, asking some officers, and every sargent I seen, still nothing, all I got was "whats your name, and I will check on it, still

nothing. Now here it is September 30, and I finally get a nurse to look at it last night, and she told me to put sick call in, that im probably going to need antibiotic. With all do respect, when a person first comes in and needs any type of medical "help" they should receive that help, I didn't get that, so I don't feel I should be charged for a examine or any medicine prescribed. This sore that a scrape has turned into, on my foot looks like staff, and hurts on a level of 7, from 1-10 its hard to walk on & to et to sleep, I believe it would not have come to this if I would've received medical help August 17. Thank you, god bless!

(Doc. 12-5 at 16). The inquiry was timely responded to and informed Herrera that a "medical sick call [was] scheduled [for him] and [he] would be charged" (*id*.); to which Herrera responded:

PLEASE DO NOT CLL ME FOR SICK CALL, IM REFUSING IT! THANK YOU

(Doc. 12-5 at 17). That same day, on October 2, 2017, Herrera submitted a general grievance, stating:

I'm writing this grievance, because I was basically denied medical attention when I first got here, August 17. I had some scrapes on my elbows, & one on my foot, all of them healed except the one on my foot. It has gotten worse, and I've tried to get officer[s] and a few sergeants to check medical, because the nurse who examined me August 17, said she was letting them know, via computer, plus she told me to inform the officer escorting me to the ack, and they would bring me, I did that & nothing happened. I tried 2 weeks after that, nothing but "whats your name. I'll check on it", so I finally go out pull call and the nurse tells me to put sick call in I did, but I don't believe I should be charged, response from sick call thins different, so just need documentation on this when my foot falls off, or worse. Respectfully addressed, Thank you.

(Doc. 12-5 at 3). The grievance was responded to as follows:

You have refused medical and mental health appointments. You have to be seen in order to be treated. If you think you would like to be seen then place a sick call and this time please do not refuse.

(*Id.*). Herrera was not examined for the scrapes while incarcerated at Mobile Metro Jail and did not subsequently complain about the injury or needed medical treatment while at the jail.[5]

"The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). To establish deliberate indifference to a medical need, a plaintiff bears the burden of demonstrating the existence of an "objectively serious medical need." *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id*. (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n. 9 (2002)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id.* (internal quotation marks and citation omitted). "[A] prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official *knows of* and *disregards an excessive risk to inmate health or safety;* the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he

---

[5]     Notably, Herrera received at least one subsequent medical exam in March of 2018 because the record confirms he received antibiotic treatment for sores in his nose. (Doc. 12-5 at 17-23).

must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S. Ct. 1970 (emphasis added).

As laid out in Herrera's complaint and supported by the record, Herrera's "scrapes" do not meet the criteria of an objectively serious injury. The screening form denotes that no emergent need was present at the time of booking. Additionally, no facts are pleaded describing a serious medical injury, including bleeding, pain, or the size of the scrape. *See, e.g., Youmans v. Gagnon*, 626 F.3d 557, 561 (11th Cir. 2010) (concluding that plaintiff had not established serious medical need when he had "several cuts and abrasions on his head, face, shoulder, elbow, and hand" and appeared to be bleeding slightly); *Camps v. Warner Robins*, 822 F. Supp. 724, 733 n.3 (M.D. Ga. 1993) (cut or scrape was not considered serious injury warranting constitutional protection); *Boyett v. Cnty of Washington*, 2006 U.S. Dist. LEXIS 86910, 2006 WL 3422104, at *17 (D. Utah Nov. 28, 2006) (a "superficial head injury, even one requiring sutures, does not qualify as a serious medical need."); *but see Alsobrook v. Alvarado*, 477 F. App'x 710, 713 (11th Cir. 2012) (denial of motion to dismiss based on qualified immunity was proper, as allegations of an unjustifiable delay of one hour and forty minutes in treating a continuously bleeding "gash to the back of [plaintiff's] head, a cut under his right eye, a bloody nose, [and] a cut high on his forehead by the hairline" while his clothes were covered in blood and his face was swelling and bruising were sufficient to plead deliberate indifference.). Consequently, the complaint is void of allegations suggesting that a layperson would conclude Herrera required

immediate medical attention. Thus, Herrera's scrapes cannot be considered a serious medical need at the time he was booked into the jail.

A month and a half after being booked into the jail, Herrera claims the scrape on his foot began to hurt and looked like it might be infected. At this time, reading the facts in a light most favorable to Herrera, the court will assume the scrape was a serious injury. However, the record belies Herrera's claim that he was denied medical treatment at this time. Instead, the record confirms upon his first medical request, he was immediately scheduled for an examination and medical appointment. Thus, the crux of Herrera's claim is that he was denied *free* medical treatment.

It is clearly established that the constitution imposes on governments a duty to provide medical care to those in its custody. *See Estelle v. Gamble*, 429 U.S. 97, 103-04, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976) (determining the Eighth Amendment requires adequate medical care be provided to convicted prisoners); *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 60 L.Ed.2d 447 (1979) (finding the Due Process Clause requires the government to provide adequate medical care for pretrial detainees and those apprehended by the police). The reasoning behind this obligation is simple, "it is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself." *Estelle*, 429 U.S. at 104 (quoting *Spicer v. Williamson*, 191 N.C. 487, 132 S.E. 291, 293 (N.C. 1926). However, the constitutional duty to *provide* medical care to prisoners is not the same as the requirement to *pay* for it. *See City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 245, 103 S. Ct. 2979, 77

L.Ed.2d 605 (1983). Courts have held a prisoner does not have a "general constitutional right to free health care." *Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir. 1997). Therefore, Herrera has failed to establish Defendants were deliberately indifferent to a serious medical need at any time, and summary judgment should be granted in favor of Defendants.

## IV. Conclusion.

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment be **granted,** that Plaintiff Herrera's action against Defendants Trey Oliver, III, Sam Cochran, and Sam Houston, be **dismissed** with prejudice.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the

consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 14th day of February, 2019.

/s/ P. Bradley Murray
UNITED STATES MAGISTRATE JUDGE